IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:07-cr-116 |
| vs. | ) | |
| | ) | **REPORT AND** |
| Sylvester Littlewind, | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Defendant Sylvester Littlewind ("Littlewind") timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. #132), and a motion to proceed *in forma pauperis* (Doc. #133). Littlewind was found guilty by a jury of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153, use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 1153. (Doc. #104). Littlewind appealed his convictions to the Eighth Circuit Court of Appeals on the grounds that there was insufficient evidence to support the jury's verdict, and the district court erred in admitting evidence of prior bad acts. (Doc. # 126-1). The Eighth Circuit Court of Appeals affirmed the district court's judgment. (Doc. #126). In Littlewind's § 2255 motion he contends he was denied his sixth amendment right to effective assistance of counsel at trial because his attorney failed to file a motion to suppress Littlewind's incriminating statement to investigating agents, failed to introduce exculpatory evidence, failed to employ a ballistics expert, and failed to challenge the police officers' entry into Littlewind's home without a warrant.

**Ineffective Assistance of Counsel**

To establish a claim for ineffective assistance of counsel, Littlewind must show his counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). In Strickland, the Supreme Court established a two-pronged test for analyzing ineffective assistance of counsel claims. First, Littlewind must show his counsel's conduct was objectively unreasonable. Second, Littlewind must demonstrate his counsel's performance prejudiced his defense. In other words, under the second prong, Littlewind must prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. There is a strong presumption that counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996). A court reviewing counsel's performance must make every effort to eliminate hindsight and second-guessing. Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996). Under the Strickland standard, strategic decisions that are made after thorough investigation of both law and facts regarding plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690.

**Motion to Suppress**

Littlewind's girlfriend, Budene Eback ("Eback"), suffered a head injury while at Littlewind's residence, which doctors testified was consistent with a gunshot wound. Both Littlewind and Eback were drinking excessively. Littlewind was arrested for public intoxication. The next day Littlewind was interviewed by Bureau of Indian Affairs ("BIA") Special Agent

Donovan Wind and Federal Bureau of Investigation ("FBI") Agent Aaron Kellerman.  Littlewind

told the agents varying stories about what happened and eventually made two written statements.

Littlewind's first statement, which was hand written by Agent Wind, states that Littlewind

remembers waking up and seeing Eback full of blood. (Trial Tr. at 560).  After the agents told

Littlewind they did not believe him, Littlewind made a second statement which was typed by

Agent Wind.  (Trial Tr. 567).  Littlewind's second statement says he and Eback struggled over a

gun and it accidently discharged.  (Trial Tr. 567).  Littlewind contends his attorney should have

filed a motion to suppress his second statement because the agents lied and tricked him into

making the statement, the agents denied him the right to counsel, Littlewind was under the

influence of prescription medications, Littlewind did not physically write the statement, and

Littlewind was confused, scared, and did not know his rights.

In Littlewind's § 2255 motion he claims after he made the first statement the agents lied

when they told him the statement could not be true because Littlewind's hands tested positive for

gunshot residue, and the agents had witnesses who saw Littlewind hide a gun.  Agent Kellerman

allegedly told Littlewind to avoid being charged with attempted murder, he should say that

Littlewind and Eback struggled with a gun and it accidently discharged.  If Littlewind made the

second statement, Agent Kellerman allegedly promised he would only receive probation and

treatment.  Littlewind claims he asked for a lawyer four times during the interrogation but the

agents told him he could not get counsel until he was charged in federal court.  Littlewind's

testimony at trial is consistent with his claims in his § 2255 motion.  (See Trial Tr. 948-49, 952-

54).

During trial Littlewind testified he was read his Miranda rights and he understood that

giving a statement was voluntary, but he felt like he had no choice.  (Trial Tr. 948, 995).

3

Littlewind testified he may have asked Agent Wind to write the statements because Littlewind has poor handwriting.  (Trial Tr. 951).

Agent Wind testified at trial that he read Littlewind his Miranda rights from a standard BIA form.  After Agent Wind read each line on the form he asked Littlewind if he understood or had any questions, and after being read his rights Littlewind signed a Miranda waiver form. (Trial Tr. 551, 644).  Agent Wind stated Littlewind was in custody for a little more than 24 hours prior to the interrogation and appeared to be sober.  (Trial Tr. 568).  The interrogation lasted for approximately an hour and 40 minutes.  (Trial Tr. 579, 633).  Agent Wind testified he never threatened Littlewind, never told Littlewind his hands tested positive for gunshot residue, never told Littlewind he could get a lesser sentence by making a statement, and never told Littlewind he was not allowed to have counsel until he was charged in federal court.  (Trial Tr. 620-23, 648, 659).  Agent Wind stated that Littlewind did not seem confused and never asked for an attorney during the interrogation.  (Trial Tr. 622-23, 659).

Agent Wind testified that prior to writing Littlewind's statements he informed Littlewind of the voluntariness of giving a statement and advised him his Miranda rights were still available.  (Trial Tr. 555, 644).  Littlewind allegedly responded that he wanted to give a statement, but did not want to write it himself because he had a problem with his finger.  (Trial Tr. 555).  Agent Wind wrote the first statement and Littlewind placed his initials next to each paragraph and signed the statement.  (Trial Tr. 556, 646-47).

Agent Wind testified he did not believe Littlewind's first statement was accurate and informed Littlewind of his reasons for not believing him.  (Trial Tr. 563-64).  He then asked Littlewind whether he wanted to make a second voluntary statement, and Littlewind responded in the affirmative.  (Trial Tr. 564-65, 628-30).

4

Agent Kellerman testified Littlewind was read his Miranda rights and voluntarily made the statements with the understanding that the matter was under investigation.  (Trial Tr. 752-54).  Agent Kellerman witnessed Littlewind read the statements that Agent Wind wrote and in Agent Kellerman's opinion, Littlewind  indicated he understood the statements and what they were asserting by putting his initials next to each paragraph and by voluntarily signing the statements.  (Trial Tr. 754).  Agent Kellerman testified he did not tell Littlewind it would look better for him if Littlewind said that he and Eback struggled over the gun and it accidentally discharged.  (Trial Tr. 771).  He also stated that Agent Wind did not threaten Littlewind.  (Trial Tr. 754).  Both Agent Wind and Agent Kellerman were vigorously questioned on cross-examination by Littlewind's attorney about the two statements and the circumstances surrounding the writing of the statements.

Counsel's failure to file a motion to suppress the second statement did not prejudice Littlewind's defense if the motion would not have been likely to succeed.  United States v. Johnson, 707 F.2d 317, 320 (8th Cir. 1983).  A waiver of an individual's Miranda rights is valid if it is made knowingly, voluntarily, and intelligently.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  A waiver is knowing and intelligent if it was "made with a full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it."  Moran v. Burbine, 475 U.S. 412, 421 (1986).  A waiver is voluntary if it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  Id.  The court must consider the totality of the circumstances to determine whether Littlewind's will was overborne.  Moran, 475 U.S. at 421; United States v. Korn, 138 F.3d 1239, 1240 (8th Cir. 1998).

After reviewing the entire record, the court finds the totality of the circumstances does not indicate Littlewind's will was overborne.  Littlewind can read and write, he has a GED and

has attended some college (Trial Tr. 880, 995), he is familiar with the legal system (Trial Tr. 483, 992-93), he was read his Miranda rights from a standard form, and he directed Agent Wind to write the statements.  Littlewind was only in custody for approximately 24 hours prior to being interrogated and the interrogation took only a short period of time.

Littlewind was given Ativan and a gastrointestinal cocktail several hours before the interrogation.  (Doc. #132-1).  However, being under the influence of prescription medication does not necessarily invalidate a Miranda waiver.  United States v. Korn, 138 F.3d at 1240. Littlewind claims he was not in his "right state of mind" when he made the statements and avers his attorney should have called the nurse who administered the medications to testify.  There is no indication that Littlewind was confused or adversely affected by the medications.  Littlewind was able to testify as to what occurred during the interrogation, and there is nothing in the record suggesting that at the time of the interrogation Littlewind complained of any adverse side effects from the medications.  Both agents testified Littlewind understood the circumstances surrounding the interrogation and Agent Wind testified that Littlewind appeared sober. Littlewind's attorney's decision not to call the nurse who administered the medication did not prejudice Littlewind's defense, as there is no indication the nurse would have testified the medications adversely affected Littlewind.

Although Littlewind claims the agents tricked him into making the second statement by telling him lies, both of the agents testified they did not tell Littlewind his hands tested positive for gunshot residue, and did not tell Littlewind they had witnesses who saw him hide a gun. Littlewind's attorney raised his claims in front of the jury at trial, and the jury was free to determine each witness's credibility based on their own perceptions.

6

Although Littlewind alleges he asked for an attorney several times and was told he could not get counsel until he was charged in federal court, Agent Wind testified Littlewind never asked for an attorney during the interrogation.  The agents stated they would have ended the interrogation had Littlewind requested counsel, and Agent Kellerman testified they complied with their policy when Littlewind requested counsel during a later interrogation.  (Trial Tr. 1034-35).  Littlewind's attorney cross-examined the agents as to Littlewind's claim.  The jury was free to determine which witnesses to believe.

After considering the totality of the circumstances, it does not appear a motion to suppress Littlewind's second statement would have been successful.  Therefore, there was no prejudice to Littlewind's defense due to his counsel's failure to make the motion.  An attorney's performance is not unreasonable for failure to make a non-meritorious motion.  United States v. Johnson, 707 F.2d 317, 323 (8th Cir. 1983).

## Exculpatory Evidence

Littlewind contends his attorney failed to introduce or investigate potentially exculpatory evidence.  Littlewind states several items, including the steering wheel cover in his van, his van seats, his license plate, and a mop handle that tested negative for human blood, would have helped his defense by proving he did not leave the crime scene to hide a gun as alleged by the prosecution.  Littlewind alleges most of the evidence came back negative for gunshot residue as well, but he does not specifically state to which items he refers.  Littlewind further claims he was prejudiced because the evidence was not tested for human blood or gunshot residue until two months after his trial was supposed to start in May of 2008.

If the evidence was tested at the crime lab in July of 2008, as Littlewind alleges, it was tested prior to Littlewind's trial, which did not begin until September 2, 2008.  Littlewind has not

stated any facts demonstrating how he was prejudiced by the timing of the crime lab tests. Littlewind's argument that he was somehow prejudiced by the timing of the tests on the evidence is without merit.

Gunshot residue was discussed at Littlewind's trial when Littlewind's attorney cross-examined Agent Wind and inquired if the agent told Littlewind during the interrogation that Littlewind's hands tested positive for gunshot residue, and when Littlewind testified in his defense that the agents tricked him into giving the second incriminating statement by saying his hands tested positive for gunshot residue. (Trial Tr. 621, 948-49, 953-54, 1000). It was a matter of trial strategy for Littlewind's attorney to elicit the information to explain why Littlewind made an incriminating statement. Agent Wind testified that the lab would not test for gunshot residue (Trial Tr. 607) and there is no evidence suggesting any items were actually tested for gunshot residue. Littlewind was not prejudiced by his attorney's failure to introduce evidence that items tested negative for gunshot residue when such evidence does not exist.

There was no testimony at trial suggesting Littlewind's steering wheel cover, his van seats, his license plate, or a mop handle tested positive or negative for human blood. Even if the items did test negative for human blood the jury still could have found Littlewind left the crime scene to hide a gun because Littlewind said he did so in his second written statement (Trial Tr. 567), and two of his neighbors testified they saw Littlewind leave his home. One of his neighbors testified she saw Littlewind driving his van 15 to 20 minutes prior to the time Littlewind arrived at her home and said Eback had been shot. (Trial Tr. 360-61). Another of Littlewind's neighbors testified he saw Littlewind leave his home in his van 10 to 15 minutes prior to approaching the neighbor, and that Littlewind had blood on his hands and shirt. (Trial

Tr. 209-210). The jury could have found Littlewind left the house to hide a gun regardless of whether his van or items in his van tested positive or negative for human blood. Littlewind's attorney did not provide ineffective assistance for failure to introduce the evidence.

### Ballistics Expert

Littlewind contends his attorney should have employed a ballistics expert to testify on his behalf. Littlewind notes the prosecution had no gunpowder evidence, no bullet was discovered, and there were no bullet holes at the crime scene. Littlewind claims if Eback was shot with a .22 rifle she would be paralyzed or would have sustained brain damage. Presumably, Littlewind wanted a ballistics expert to testify in accordance with Littlewind's opinion that if Eback were shot she would have suffered more serious injuries. Littlewind also contends Eback called his appellate counsel and informed him that someone else assaulted her with a tire iron. Littlewind states Eback was previously charged with lying to a police officer and avers his attorney should have introduced the information to attack her credibility.

Littlewind's claim that Eback called his appellate counsel and said she was assaulted with a tire iron by someone else is an attempt to prove he did not shoot Eback. Whatever Eback told Littlewind's appellate counsel has no bearing on whether Littlewind's trial counsel was ineffective. Trial counsel did not have this information. Similarly, Eback's previous charge of lying to a police officer, which the court notes was dismissed, also has no bearing on whether Littlewind's trial counsel was ineffective.

The court finds there is no reasonable probability that a ballistics expert's testimony would have produced an acquittal. It is unlikely a ballistics expert would have agreed with Littlewind that if Eback was shot with a .22 rifle she would be paralyzed or would have

sustained brain damage.  A ballistics expert would not likely be competent to testify about

medical consequences.  Dr. David Stover, a surgeon with extensive experience in treating

gunshot wounds, examined Eback when she arrived at MeritCare Hospital and testified the

wounds on the back of Eback's head were consistent with an entrance wound and an exit wound

caused by a bullet.  (Trial Tr. 297-99, 302).  Dr. Stover stated that the bullet did not penetrate the

cranium and the wounds were superficial.  (Trial Tr. 330).  Dr. Jeffrey Lystad, an emergency

room physician who was part of the trauma team that treated Eback, testified that Eback's

wounds were consistent with a gunshot wound that did not hit the skull.  (Trial Tr. 443, 445, 447,

456).  Given the doctors' testimony, a ballistics expert, even if competent to testify about it,

would probably not agree that Eback would be paralyzed or have suffered brain damage from a

superficial gunshot wound that did not enter her cranium.  Littlewind's attorney was not

ineffective for failing to obtain a ballistics expert.

### Illegal Search

Littlewind contends his attorney should have argued the police officers or agents needed

a search warrant to enter his home.  Police officers are allowed to enter a home without waiting

for a warrant "when they reasonably believe that a person within is in need of immediate aid."

United States v. Spotted Elk, 548 F.3d 641, 651 (8th Cir. 2008) (citations omitted).  On the day

of the incident, Littlewind's neighbor called the police department and said Eback was dead and

she was bleeding from her head.  (Trial Tr. 388).  After discovering Eback was alive,

Littlewind's neighbor called the police a second time and told the dispatcher Eback was in need

of an ambulance.  (Trial Tr. 393).  Based on the circumstances, the police reasonably believed

Eback was in need of immediate aid and were permitted to enter Littlewind's home without a

warrant.  Littlewind's attorney did not provide ineffective assistance for failing to challenge the police officers' or agents' entrance into Littlewind's home without a warrant.

**Conclusion**

The court finds Littlewind's counsel acted within a legitimate range of professional judgment and that Littlewind's allegations do not meet the <u>Strickland</u> test.  At sentencing, the district judge stated the charges against Littlewind were vigorously defended by his attorney and there was nothing that would cause the district judge to question the tactics or competence of Littlewind's attorney.  (Sentencing Tr. 12-13.)  Littlewind's attorney's performance was not unreasonable for failure to make a non-meritorious motion to suppress, for failing to challenge the police officers' entrance into Littlewind's home when that entrance was for emergency purposes, for failing to introduce evidence that did not exist or would not have helped Littlewind's defense, or for failing to obtain an unnecessary expert.  Accordingly, **IT IS RECOMMENDED** that motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 **BE DENIED** (Doc. #132).  **IT IS FURTHER RECOMMENDED** that Littlewind's motion to proceed *in forma pauperis* (Doc. #133) **BE DENIED** as there is no filing fee or costs for Littlewind to bring his § 2255 motion.

Dated this 21st of January, 2011.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 59(b)(2), Federal Rules of Criminal Procedure, and District of North

Dakota Local Court Criminal Rule 59.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than February 7, 2011, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.